IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHEN R. LAWLESS                                                                           PLAINTIFF

V.                                              NO. 15-5223

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Stephen R. Lawless, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

### **I.     Procedural Background:**

Plaintiff protectively filed his application for DIB on October 25, 2012, alleging an inability to work since June 30, 2012, due to post traumatic stress disorder (PTSD), sleep apnea, and back problems. (Doc. 11, pp. 153-159, 233, 237). An administrative hearing was held on March 5, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 11, pp. 27-69).

By written decision dated July 3, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – depressive disorder, not otherwise specified; PTSD; and alcohol dependence. (Doc. 11, p.

1

16). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 11, p. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine, repetitive tasks in an environment where interpersonal contact with coworkers and supervisors is incidental to the work performed, there is no contact with the general public, and the supervision required is simple, direct, and concrete.

(Doc. 11, p. 19). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform his past relevant work as a warehouse worker. (Doc. 11, p. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 15, 2015. (Doc. 11, pp. 4-7). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

3

to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §404.1520  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §404.1520,  abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §404.1520.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in failing to consider all of Plaintiff's impairments in combination; 2) Whether the ALJ erred in his credibility analysis: 3) Whether the ALJ erred in his RFC determination; and 4) Whether the ALJ erred in failing to fully and fairly develop the medical record. (Doc. 9).

#### A. Impairments in Combination:

Plaintiff argues that the ALJ neglected to discuss in any detail his testimony regarding back pain, difficulty sitting and standing for extended periods, physician's instructions to lift no more than twenty-five pounds, the residual effects and dysfunction of his right hand due to a wrist injury, tinnitus, sleep apnea, blackouts and stomach problems. The ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  (Doc. 11, p. 15).  He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Doc. 11, p. 15). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Doc. 11, p. 15).   The ALJ

4

concluded that Plaintiff did not have an impairment "or combination of impairments" that met or medically equaled the severity of one of the listed impairments. (Doc. 11, p. 17). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In addition, in his decision, the ALJ addressed Plaintiff's back problem, hand problems, stomach issues, and tinnitus, as follows:

> As to his tinnitus, he evinced no difficulties at the disability hearing in his ability to hear and understand conversational speech. He alleged that he cannot keep meals in his stomach, and experiences daily nausea and vomiting. But the record, including measurements of his weight taken by Chet Crawford, M.D., at a consultative examination on January 27, 2013, indicate he maintains a healthy body mass index, above 20 (Ex. 5F, pg. 3). At this same examination he showed normal range of motion, normal strength, gait sensation, and reflexes (Ex. 5F, pp. 3-5). Dr. Crawford also noted a diagnosis of sleep apnea, but again, this was reported to be controlled with a continuous positive airway pressure (CPAP) machine (Ex. 5F, pg. 5).

(Doc. 11, p. 16). With respect to black-outs, Plaintiff testified that they do not happen that often. (Doc. 11, p. 52).

The Court finds there is substantial evidence to support the fact that the ALJ considered all of Plaintiff's alleged impairments in combination.

### B. Credibility Analysis:

Plaintiff argues that the ALJ offered no eplanation for why he found Plaintiff's testimony not to be credible. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th

5

Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 11 p. 20). The ALJ addressed Plaintiff's daily activities, noting that Plaintiff had mild restriction. (Doc. 11, p. 17). He found that the record showed that even if Plaintiff's typically daily activities were so limited, the remaining record showed that this was largely by choice, and that Plaintiff was capable of a much wider range of activities, notwithstanding his mental impairments. (Doc. 11, p. 17). The ALJ noted that Dr. Terry L. Efird's examination dated January 23, 2013, revealed Plaintiff was drinking over a twelve-pack of beer daily, yet he was able to drive unfamiliar routes and shop independently; he could do household chores, mow the lawn, and go to the bar six days a week and play darts and shoot pool. (Doc. 11, p. 17). In addition, Dr. Chet Crawford examined Plaintiff on January 27, 2013, and although Plaintiff indicated he did not like to be around people, when he went into Dr. Crawford's front office, he indicated that he had just had a birthday party with multiple people in his home and had a sleepover that night. (Doc. 11, p. 530). Dr. Crawford did not address this with Plaintiff, but reported that it did not appear to be consistent with Plaintiff's current allegations.

6

It is also noteworthy that Plaintiff did not follow the recommendations of various physicians regarding his drinking and smoking. On July 1, 2011, Dr. Richard C. Heckmann, of the Veteran's Administration, was concerned with Plaintiff's heavy ETOH use, and indicated that Plaintiff should stop all drinking both because of the diagnostic issues, but also because ETOH was a strong mood depressant, and would greatly reduce the impact of psychotropic medicine. (Doc. 11, p. 492). However, Plaintiff said he was not willing to stop ETOH, as he did not see it as a problem. (Doc. 11, p. 492). Dr. Heckmann also counseled Plaintiff to stop smoking. (Doc. 11, p. 497). On July 10, 2012, it was reported that Plaintiff smoked approximately two packs of cigarettes per day and reported drinking a 12 pack of beer per day. (Doc. 11, p. 392). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted).

Based upon the foregoing, and for other reasons set forth in Defendant's brief, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination (Whether Plaintiff can perform a full range of work and whether Plaintiff can perform his past relevant work as a warehouse worker):

Plaintiff argues that the ALJ did not properly evaluate his diagnosed mental impairments in combination with his diagnosed physical impairments. Plaintiff also argues that the ALJ neglected to consider all of Plaintiff's physical impairments. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d

584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

The ALJ considered all of Plaintiff's medical records, including the opinion of Christal Janssen, Ph.D., a non-examining state agency psychological consultant, who completed a Psychiatric Review Technique form, and concluded that Plaintiff had mild restriction of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Doc. 11, pp. 76-78). The ALJ also gave great weight to the opinion of Dr. Bill F. Payne, a non-examining state agency medical consultant, who opined that Plaintiff did not have a severe physical impairment. (Doc. 11, p. 17). Both opinions were later endorsed by Dan Gardner, M.D., and Dan Donahue, Ph.D. (Doc. 11, p. 17). The ALJ also discussed in detail the examination by Dr. Terry Efird, who noted that Plaintiff communicated and interacted in a reasonably socially adequate manner and communicated in a reasonably intelligible and effective

8

manner; had the capacity to perform basic cognitive tasks required for basic work like activities; appeared able to track and respond adequately for the purposes of the evaluation; generally completed most tasks during the evaluation; and completed most tasks within an adequate time frame. (Doc. 11, p. 519).  The Court also notes that Dr. Crawfod reported that with respect to Plaintiff's back pain, he saw no objective evidence that Plaintiff should be limited for work secondary to the back pain at that point, and seemed to be able to perform normal functional duties of any job. (Doc. 11, p. 530).

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff would be able to perform a full range of work at all exertional levels.

In his decision, the ALJ found Plaintiff would be able to perform his past relevant work as a warehouse worker. The VE testified that under the Dictionary of Occupational Titles (DOT), warehouse work is classified as medium exertional level, unskilled work. (Doc. 11, p. 65).  Relying upon the information in the DOT, the VE opined that Plaintiff's RFC would allow him to perform the warehouse job. (Doc. 11,  p. 65). It is proper for the ALJ to elicit VE testimony in evaluating a claimant's capacity to perform past relevant work. Wagner v. Astrue, 499 F.3d 842, 853-854 (8th Cir. 2007); 20 C.F.R. §404.1560(b)(2).

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff would be able to perform his past work as a warehouse worker.

### D.  **Failure to Fully and Fairly Develop the Record**:

Plaintiff argues that ALJ failed to order a Physical RFC Assessment, a Psychiatric Review Technique, or a Mental RFC Assessment. In fact, in a Disability Determination Explanation – Initial – Dr. Bill F. Payne completed a Case Analysis dated February 27, 2013, where he found the medical records supported a non-severe physical rating. (Doc. 11, p. 76).

9

In the same document, Christal Janssen, Ph.D., completed a Psychatric Review Technique form and Mental RFC Assessment. (Doc. 11, pp. 76-78). In a May 22, 2013 Disability Determination Explanation – Reconsideration – Dan Gardner, M.D. and Dan Donahue, Ph.D., affirmed the decisions.

"Plaintiff bears a heavy burden in showing the record has been inadequately developed." Chapman v. Colvin, No. 4:15-CV-00522-JLH-JJV, 2016 WL 2585652 at *4 (E.D. Ark. Apr. 11, 2016). The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The Court finds that in this case, the existing medical sources contained sufficient evidence for the ALJ to make a determination.

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 3rd day of January, 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE